IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-02206-REB-BNB

GREGORY LAY LISCO,

Plaintiff,

v.

DR. TIM CREANY, M.D. Medical Provider, Freemont Correctional Facility,
MICHAEL S. WALSH, Physician Assistant, Freemont Correctional Facility,
DR. WRIGHT, MD, Medical Provider, Cheyenne Mountain Re-Entry Center,
NURSE SERENE BEALL, Intake Nurse, Cheyenne Mountain Re-Entry Center,
OC BAKER, Intake Technician, Cheyenne Mountain Re-Entry Center,
MS TREDWAY, Case Manager, Cheyenne Mountain Re-Entry Center,
MR. LONDON, Case Manager, Cheyenne Mountain Re-Entry Center,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the plaintiff's **Motion for TRO and/or Preliminary Injunction**

**Pursuant to Fed.R.Civ.P. 65** [Doc. #9, filed 10/04/2010] (the "Motion").  I respectfully

RECOMMEND that the Motion be DENIED.

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972).  I cannot, however, act as his advocate.  Hall v. Bellmon,

935 F.2d 1106, 1110 (10th Cir. 1991).

The plaintiff is currently incarcerated by the Colorado Department of Corrections.  He

filed his Amended Prisoner Complaint on November 29, 2010 [Doc. #14] (the "Complaint").

The Complaint asserts claims based on the defendants' alleged failure to properly diagnose and

treat the plaintiff's knee injury.  The plaintiff seeks an order directing the defendants to provide

accommodations to prevent further injury; refrain from retaliating against him; and provide him with timely and adequate medical attention. *Motion*, p. 2, ¶ 9; p. 5, final paragraph.[1]

The plaintiff seeks both a temporary restraining order and a preliminary injunction. Where the opposing party has notice, as here, "the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." Emmis Communications Corp. v. Media Strategies, Inc., 2001 WL 111229, *2 (D. Colo. Jan. 23, 2001).

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established. Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964). The burden is on the movant to establish his right to the relief requested. Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975). To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and

(4) there is a substantial likelihood that the moving party will eventually prevail on the merits. Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980). The plaintiff's right to relief must be clear and unequivocal. Penn, 528 F.2d at 1185.

The following kinds of preliminary injunctions are disfavored:  (1) those that disturb the status quo; (2) those that are mandatory as opposed to prohibitory; and (3) those that afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits.

_____

[1]The Motion and the Complaint are not paginated.  Therefore, I refer to the page numbers of the Motion and the Complaint as they are assigned by the court's docketing system.

SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096 1098-99 (10th Cir. 1991).  "[A]ny preliminary

injunction fitting within one of the disfavored categories must be more closely scrutinized to

assure that the exigencies of the case support the granting of a remedy that is extraordinary even

in the normal course."  O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d

973, 975 (10th Cir. 2004).  The plaintiff seeks both a mandatory injunction and an injunction that

would disturb the status quo.[2]  Therefore, he "must make a strong showing both with regard to

the likelihood of success on the merits and with regard to the balance of the harms."  Id. at 976.

### 1.  Likelihood of Success on the Merits

The Complaint contains the following allegations:

1.   On or about April 22, 2010, a large heavy metal box fell onto the plaintiff's right leg

and injured his knee while he was working as a welder in the maintenance shop at the Fremont

Correctional Facility ("FCF").  *Complaint*, pp. 4, 5, ¶¶ 15, 19.  The box measures approximately

6 feet by 5 feet, is 1/4 inch plate steel, and weighs approximately 500-600 pounds.  Id. at p. 5, ¶

19, n.1.

2.   The plaintiff's supervisor escorted the plaintiff to the infirmary.  Id. at ¶ 21.  The

plaintiff was examined by a nurse.  The nurse immediately brought the plaintiff's injury to the

attention of defendant Dr. Tim Creany.  Dr. Creany ordered an x-ray.  Id. at ¶ 22.

---

[2]Mandatory injunctions "affirmatively require the nonmovant to act in a particular way."
SCFC, 936 F.2d  at 1099.  Injunctions that disturb the status quo alter the parties existing
relationship.  Id. at 1100.  "The status quo is not defined by the parties' existing *legal rights*; it is
defined by the *reality* of the existing status and relationships between the parties, regardless of
whether the existing status and relationships may ultimately be found to be in accord or not in
accord with the parties' legal rights."  Id. (emphasis in original).

3.   On or about April 27, 2010, defendant Michael Walsh, a Physician's Assistant, interpreted the report and diagnosed the plaintiff with a partially ruptured patellar tendon. Id. at ¶ 23.  Walsh determined that no medical intervention was needed because the tendon would grow back on its own and the ruptured portion of the tendon would dissolve in 3-4 years. Id. at ¶ 24.  Walsh ordered that the plaintiff avoid stairs and that FCF officials provide bottom floor housing and a bottom bunk assignment. Id. at ¶ 25.

4.   The plaintiff had his family ask an "outside doctor" about the nature of a partially ruptured patellar tendon.  He learned that his injury required surgery within a limited time "and that delay would cause permanent damage." Id. at p. 6, n. 4.

5.   The plaintiff suffered continuous, sharp, and intense pain.  Routine daily movement intensified the pain. Id. at ¶ 26.

6.   The plaintiff was transferred to the Cheyenne Mountain Re-entry Center ("CMRC") on or about July 2, 2010. Id. at ¶ 35.  Upon arrival at CMRC, the plaintiff informed Intake Nurse Serene Beall, Intake Technician Baker, Case Manager Tredway, and Case Manager London of his injured knee and requested that accommodations be made to prevent further injury. Id. at pp.6- 7, ¶ 37.  Beall and Baker "arrogantly informed [the plaintiff] that they were already well aware of his condition and needs for accommodations." Id. at p. 7, ¶ 38.

7.   The plaintiff did not receive housing accommodations. Id. at ¶ 39.

8.   Dr. Wright saw the plaintiff on or about July 2010. Id. at ¶¶ 39-40.  Dr. Wright "went through painstaking effort to explain the injuries, and provide his contradictory analysis that the bump on the knee was merely a bone chip." Dr. Wright ordered more x-rays. Id. at ¶ 40.  Dr. Wright provided the plaintiff with enough Ibuprofen to last until the plaintiff could purchase his

own. Id. at ¶ 41.  Dr. Wright "refused to provide orders regarding accommodations, such as use of the facility elevator or bottom floor housing."  Id. at ¶42.

9.   The plaintiff repeatedly asked Mr. Tredway and Mr. London to help him with issues presented by "multiple staircases" he was "unable to traverse."  Id. at ¶ 43.  Mr. Tredway and Mr. London instructed the plaintiff to go to the medical department.  Id. at ¶ 44.

10.   On or about August 11, 2010, the plaintiff was seen by Dr. Wright.  Dr. Wright provided the plaintiff with a temporary elevator pass and a two week prescription of Ibuprofen. Id. at ¶ 48.  Dr. Wright also stated he would consult an orthopedic specialist.  Id. at ¶ 49.

11.   On September 9, 2010, the elevator pass was taken from the plaintiff because it had expired.  Dr. Wright refused to reissue the pass stating that the plaintiff did not qualify for it.  Id. at p. 11, ¶ 7.

12.   On September 27, 2010, the plaintiff was seen by a specialist at Denver Health Medical Center.  The specialist determined that an MRI would be necessary to determine the extent of the damage and what would need to be done to repair it.  The specialist ordered that the plaintiff be provided with an elevator pass.  Id.

13.   The medical staff at CMRC has refused to issue an elevator pass for the plaintiff stating that he does not meet the standards for an elevator pass.  Id. at pp. 11-12, ¶ 7.

13.   On or about October 10, 2010, the "pea sized visible mass over the lower mid patellar area" noted in Walsh's report and the "Dime size firm nodule" noted in a later report came "loose from where it was on the top of [his] patella . . . while [he] was sleeping, and is now freely moving about."  Id. at pp. 7-8, ¶ 53.  Every time the plaintiff sits down, his leg becomes numb from his knee to his ankle and the top of his foot.  Id. at p. 8, ¶ 53.

14.   The plaintiff "is suffering constant sharp pain, binding muscles, and his sleep is constantly interrupted by pain. Id. at p. 7, ¶ 51.

Separately, I have recommended that the plaintiff's claims against FCF defendants Creany and Walsh be dismissed for failure to state a claim upon which relief can be granted.  For the reasons stated in that recommendation, I find that the plaintiff has failed to show a likelihood of success on the merits of the claims against Creany and Walsh.

The remaining defendants are Wright, Beall, Baker, Tredway, and London (the "CMRC Defendants").  The Complaint alleges that the CMRC Defendants failed to properly diagnose, accommodate, and treat his injury in violation of his substantive due process and Eighth Amendment rights. "[A]ctions which are protected under specific constitutional provisions should be analyzed under those provisions and not under the more generalized provisions of "substantive due process." Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir. 1990). The plaintiff's allegations raise issues solely related to the plaintiff's conditions of confinement and are appropriately analyzed as Eighth Amendment claims rather than due process claims. Id. at 1493-94.

The plaintiff states that he has a substantial likelihood of succeeding on the merits of his claims because the defendants' "utter refusal to provide medical attention" violates the Eighth Amendment and because their "inherent--even though marginalized--duties require they abide Plaintiff's requests." *Motion*, p. 3.  His claim of an "utter refusal to provide medical attention" is contradicted by the allegations of his Complaint which show he was provided with x-rays, accommodations, pain medications, and a consultation with a specialist.  His disagreement with his diagnosis and treatment does not amount to deliberate indifference. Perkins v. Kansas Dept.

of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).  The plaintiff's conclusory assertions fail to

make a "strong showing" that he will likely succeed on the merits of his claims as required by O

Centro, 389 F.3d at 976.

## 2.  Irreparable Injury

A presumption of irreparable injury exists where constitutional rights are infringed.

Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001).  The plaintiff, however, has failed to

establish a likelihood of success on his Eighth Amendment claims.  As a result, he is not entitled

to a presumption of irreparable injury.

"Determining whether irreparable harm exists can be a difficult and close question."

Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1263 (10th Cir. 2004).

"[T]he concept of irreparable harm does not readily lend itself to definition, nor is it an easy

burden to fulfill.  In defining the contours of irreparable harm, case law indicates that the injury

must be both certain and great, and that it must not be merely serious or substantial."  Id.

(internal quotations and citations omitted).  Injunctive relief is issued "to prevent existing or

presently threatened injuries."  Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931).  Such

relief "will not be granted against something merely feared as liable to occur at some indefinite

time in the future."  Id.

The plaintiff offers the following conclusory statements in an attempt to establish that he

will suffer irreparable harm if an injunction does not issues:

> 15.  Plaintiff's injury is of the nature that timely surgery was
> required was required to prevent permanent injury.  The
> opportunity to provide timely treatment is likely past; however,
> even this concern has not been professionally discussed by a
> qualified doctor, since all efforts by Lisco to attain such
> examination of medical needs has been obstinately thwarted.

> 16.   Proper examination, even at this late date, may still provide
> opportunity to mitigate the permanent disabilities that will be
> suffered.  Most particular, Plaintiff's injury is worsening on a daily
> basis; since, it has never been properly diagnosed or treated.

*Motion*, p. 4.

The plaintiff states that his injury required timely surgery to prevent permanent injury.

The only support for this statement is the plaintiff's assertion that his family "inquire[d] of an

outside doctor, regarding the nature of the diagnosed injury" and "learned the his injury required

surgery, WITHIN A LIMITED TIME, and that delay would cause permanent damage."

*Complaint*, p. 6, n.4.  The plaintiff does not identify the "outside doctor" or address the doctor's

qualifications or the material he or she relied on in concluding the plaintiff's injury required

surgery.  The plaintiff offers only an unsupported statement from an unnamed doctor who

admittedly has not examined the plaintiff or his x-rays.

The plaintiff's assertion that he has not had been properly examined, diagnosed, or

treated is belied by the allegations of the Complaint.  Since his arrival at CMRC, the plaintiff's

injury has been x-rayed, medicated, accommodated, "painstaking[ly] explain[ed]" by Dr. Wright,

and examined by a specialist.  The plaintiff's conclusory statements fail to establish that he will

suffer a certain and great injury if an injunction does not issue.

Because the plaintiff has failed to establish that there is a substantial likelihood that he

will prevail on the merits and that he will suffer irreparable injury unless the injunction issues, I

need not address the remaining requirements for injunctive relief.

I respectfully RECOMMEND that the Motion be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and

Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and

file specific, written objections.  A party's failure to serve and file specific, written objections

waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas

v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A

party's objections to this recommendation must be both timely and specific to preserve an issue

for *de novo* review by the district court or for appellate review.  United States v. One Parcel of

Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated July 28, 2011.

                                        BY THE COURT:

                                         s/ Boyd N. Boland
                                        United States Magistrate Judge